DAVIS (NEWMAN v.).    See Case No. 10,176.

## Case No. 3,644.

### DAVIS v. NEW YORK LIFE INS. CO.

[3 Hughes, 437.] [1]

Circuit Court, E. D. Virginia.    July, 1879.

LIFE INSURANCE POLICIES — LAPSE DURING CIVIL WAR—EQUITABLE VALUE—VERDICT.

1. The supreme court of the United States, in the case of New York Life Ins. Co. v. Statham, 93 U. S. 24, merely declared as a principle of law that the southern holders of northern policies of life insurance, which lapsed during the civil war by default in paying the annual premiums, were entitled to the "equitable value" of their policies, as of the date of the first default in paying the premiums, and did not undertake to set out the data or prescribe the process for ascertaining that value, but left the whole subject to be determined by the jury or chancellor in each case.

2. Where a jury after a fair trial and full argument upon intelligent and competent testimony, finds a verdict in such a case which does not seem grossly excessive, or plainly disregardful of the law, the court will not set such verdict aside.

[This was an action at law by William P. Davis, assignee of Sloman Davis, against the New York Life Insurance Company.] Upon a motion for a new trial.

William W. Old and C. W. Williams, for defendant.

The jury in this case rendered a verdict for the plaintiff for $1,615.47, with interest thereon from April 17th, 1865, till paid. This verdict was rendered in response to a claim on the part of the plaintiff for the equitable value of a certain policy for $10,000 on the life of Sloman Davis. This policy was issued December 28th, 1857, and the annual premium was $627, of which 60 per cent. was paid in cash and a note was given for 40 per cent. thereof. The premiums on it were paid when they fell due in the years 1858, 1859 and 1860, but in 1861, when the premium fell due, it was not paid, but under a claim that it had been tendered, a suit was brought which went to the supreme court of the United States, and a report of the case is to be found in 95 U. S. 425. Under that decision the policy lapsed on December 28th, 1861, and the insured was entitled to the equitable value thereof on that day, as announced in the case of New York Life Ins. Co. v. Statham, 93 U. S. 24. The question before the jury which rendered the verdict complained of was, what was the equitable value of the policy on December 28th, 1861? That was the only subject of inquiry. There was no denial on the part of the company of the right of the plaintiff to recover this equitable value, the only question presented was the amount which he was entitled to as this equitable value.

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

The insured had paid in premiums in cash from December 28, 1857, up to December 28, 1860, the date of the last payment made, the sum of........................ $1,504 80

And he had paid in interest on his notes given for 40 per cent. of the premium

in 1858................. $15 08
In 1859................. 30 16
In 1860................. 45 24
　　　　　　　　　　　　———— 90 48

Making the aggregate of the cash paid in up to the time the policy lapsed, the sum of.... $1,595 28

He had given his four notes, each for the sum of $250.80, and these on the date of said lapse amounted to the sum of................. 1,003 20

And interest one year, at six per cent. ......................... 60 18
　　　　　　　　　　　　　———————
　　　　　　　　　　　　　$1,063 38

But the jury rendered a verdict for $1,615.47, with interest thereon from April 17th, 1865, the principal being for $20.19 more than all the cash ever paid into the company by the insured, without any regard to the value of the insurance on the life in question from December 28, 1857, to December 28, 1860, which must have been considerable considering the age of the insured, and without any regard to the notes which had been given in part payment of the premiums, and were still held by the company. They rendered their verdict upon the supposition, in their own view of the case, that the whole of the premiums had been paid in cash, of which the contrary is the fact, so that the equitable value of this policy as the jury fixed it amounts to:

Their verdict................. $1,615 47
The notes which they refused to deduct, and interest one year..... 1,063 38
　　　　　　　　　　　———————
　　　　　　　　　　　$2,678 85

—Which is nearly double the amount actually paid in by the insured, without any regard to the value of the insurance for the four years during which this policy of $10,000 was carried on a person 57 years of age. Surely this statement, made partly arguendo, itself shows that the verdict of the jury is not right. The way in which the jury arrived at the amount of their verdict may be seen by the calculation which they made and which is filed with the papers in the cause.

They took the insurance on the life of a person of the age of 61, as given in certain tables in a book which was admitted as evidence......... $819 60

And the cost of insurance, age 57, from the same book............... 662 90
　　　　　　　　　　　　　————
And subtracted the two, getting 156 70
And this they multiplied by........ 10 309
　　　　　　　　　　　　　————
—The present value of $1, age 62, American tables.
　　　　　　　　　　　140960
　　　　　　　　　　　47070
　　　　　　　　　　　15670
　　　　　　　　　　　————
　　　　　　　　　　　$1,615 47

In this multiplication they made a mistake of a few cents, as may be seen by a correct multiplication, but there is no doubt but that they arrived at their verdict in that way.

We insist the verdict is erroneous, and should be set aside for the following reasons; as they occur to us, among others:

1. The basis of ascertaining this equitable value was not the correct one. In New York Life Ins. Co. v. Statham, 93 U. S. 24, the court, in the last sentence of Mr. Justice Bradley's opinion, lays down the rule that "in each case the rates of mortality and interest used in the tables of the company will form the basis of the calculation" of this equitable value. The tables which were introduced in evidence, and which we, as counsel for the insurance company, objected to, were not the tables used by the company at the time the insurance in this case was effected, nor were they in use at the time the policy lapsed. This is shown by an examination of the tables themselves, by what we know as internal evidence. On page 19 of this book we find that the annual premium on $1,000, age 57, is $66.29, and therefore, on $10,000, is $622.90, whereas the annual premium on the policy on Davis' life, age 57, as shown by the policy itself, is $627, a difference of $35.90. But we are not in want of direct evidence on this point. Mr. Moore, who was introduced as a witness by the plaintiff for the purpose of proving that this book was used by the company, also stated that, while the book had been in use for some years past, still there had been a change in the rate tables, but what that change was he could not say; and Professor Smith, also their witness, stated that the insurance on Davis' life was not according to those tables. These tables, then, were not in fact proper evidence before the jury in this case for the purpose of giving them the data for calculating this equitable value; and it is not enough for the learned counsel for the plaintiff to reply that we must produce these tables. He has not called for them, nor any other evidence in our possession. It was the plaintiff's part to produce evidence. He cannot shield himself by saying this was an insurance company. He could have gotten from this company any facts or data in their possession by the mere calling for them. The fact is that the premium paid by Davis in 1857 was upon the basis of Carlisle's tables, as may be seen from an examination of them. From those tables the insurance at 62 (age) would be for $10,000 the sum of $725, leaving a difference of $98, which, multiplied by $10,398, the value of an annuity of $1, age 62, gives $1,055.81 as the reserve fund; the fund spoken of by the learned justice in New York Life Ins. Co. v. Statham, 93 U. S. 24. Professor Smith stated in his examination that upon the basis of a premium of $627 on $10,000, age 57, he could not tell, without his book, or a long and tedious calculation, what would be the premium on the same amount, age 62,

but, guessing at it, said it would not be more than $777.50. Even upon this basis the value of the policy would have been only $1,551.50, which, according to our views, is the most that could be claimed by the plaintiff, from his own evidence, on the supposition that the whole premium had been paid in cash, and that the guessing at the amount of premium was sufficient when it was in the power of the plaintiff to get the exact figures.

2. But the verdict is erroneous on another ground already intimated. In New York Life Ins. Co. v. Statham, 93 U. S. 36, the court say, towards the close of Mr. Justice Bradley's opinion: "And the value," that is, the equitable value, "should be taken as of the day when the first default occurred in the payment of the premium by which the policy became forfeited." The first default occurred in this case on December 28, 1861, and the equitable value of this policy as of that day, with interest thereon from the close of the war, the plaintiff is entitled to recover. Now after estimating in their own way this equivalent value, the jury failed to deduct the notes which had been given for 40 per cent. of the premium on this policy, which they had already taken to have paid. This would have made the verdict:

| | |
|---|---|
| Amount of verdict rendered... | $1,615 47 |
| Less notes held by company given for 40 per cent. of premium, 4 notes of $250.80 each $1,003 20 | |
| Interest thereon one year...... 60 18 | |
| | 1,063 38 |
| | $ 452 09 |

—And we submit that at most the plaintiff should be put upon terms to give this credit now, or else have the verdict set aside. It is no answer, in our view, to this proposition, to say that these notes were paid by dividends. There was no proof of any such fact, and no evidence tending to prove it. There was evidence about the dividends declared from year to year in late years by the company, but there was no evidence that up to December 28, 1861, any dividends had been declared, and certainly it was in the power of the plaintiff to ascertain this fact specifically. The company could hardly suppose that in determining a case of this kind, where the principles for ascertaining the value are distinctly laid down, that the plaintiff would be allowed to speculate before a jury about the value of a policy, with no limit short of his own expanded expectations, and therefore may not have been prepared with all the documents necessary to rebut the evidence and theories propounded; nor do we understand that in this case such a course will yet be allowed, for as we understood the court the questions about the evidence introduced, raised by the company's counsel, were reserved by the court to be considered upon a review of the verdict of the jury after argument. Some of those questions were worthy of consideration, and

we have no doubt, when the court has given that which they deserve, it will say that much of the evidence introduced by the plaintiff on this issue was improper and irrelevant, that it was in a degree merely speculative, and in no instance was the best evidence which the party making out his case is always bound to produce, even though it may be in the possession of an adverse party; and for procuring this evidence the law affords ample and ready means. In this case there did not appear any disposition on the part of the company to withhold anything; it did not appear that any effort of any kind was ever made by the plaintiff to get any information necessary for the formation of this verdict, which had proved unsuccessful.

3. We say in conclusion that this is a case in which it is eminently proper that the court shall review the verdict of the jury, and in doing so the court could not possibly invade any of the rights which belong to the jury. The verdict was simply the result of a calculation based upon certain premises or data. There were only two matters to be considered: 1st, the premises; and 2nd, the calculation. The court was to see that the jury had the proper data, and the calculation was simple enough. The only other question in this case was the question of set-off, already fully considered. Respectfully,

William W. Old,
Of counsel for defendant.

June 29th, 1879.

As a matter of interest to the judge, I beg leave to hand him a letter from Mr. Been, the company's vice-president and actuary, which may be taken for what it is worth. It was in reply to my letter giving him a statement of the facts of this case as proved on the trial, and the manner in which the jury arrived at their verdict.

William W. Old.

Samuel B. Paul and Samuel D. Davies [for plaintiff], in reply to defendant's brief in support of his motion, state that the only subject of inquiry by the jury arising out of the declaration is, what was the equitable value of the policy December 28, 1861? He introduced another subject, to wit, set-offs of notes made by the assured in partial payment of premium. To this we responded, our interest as participants in the surplus of the company. There was thus another subject before the jury, which was properly considered on evidence and after argument. Defendant admitted that the insured was a participant in the surplus of the company. The evidence introduced was addressed solely to these two points. The second does not show, nor as matter of fact was there any testimony admitted against the objection of the defendant. As the case went to the jury then its shape was all the defendant asked, so far as the evidence was concerned.

As to the law of the case. It stood before

the jury in the very language of the defendant, and the request of the defendant to the court was granted, except in a point so patently erroneous, in the shape the defendant had by consent given the evidence of plaintiff's rights as a participant, that we do not propose to support the action of the court by any remarks. It is this verdict the defendant asks to have set aside, the result of its own deliberate choice of position as to both the law and the testimony. The spectacle of such a motion is, to say the least, rare in any court.

And the grounds on which the brief supports the motion are hardly less remarkable.

1st. That the basis of ascertaining the equitable value was not the correct one. Why? Because we tried to reach it without introducing the defendant through its officers personally as a witness; by substituting, as the record shows, without objection by defendant, the rates of insurance used by defendant now all over the land, and the defendant responded, by examination of an actuary who had been introduced by us for a wholly different purpose, the relative deduction from those tables at age sixty-one, shown by the price at age fifty-seven in the policy with age fifty-seven in those tables, which, by the very argument of the defendant's brief, was what the jury adopted as the basis of their judgment. The court will recall without difficulty that we tried to show an annuity of $192, by deducting the premium of the policy from the premium of the defendant's publication, but that $156.70 was fixed for the defence on the basis above referred to. The objection then is either we did not manage our case, as now, after sleeping on it, they think they might have made us manage it; or 2nd, that they made a mistake in their own management, which they wish the court to give them opportunity to correct. Litigation would have no end if such views could influence motions for new trials.

The second ground is: That the jury failed to deduct the notes after finding the equitable balance; and that there was no proof nor anything tending to prove, that the interest of plaintiff in the surplus of the company should have absorbed them. We submit that there was evidence, and much of it; that it was admitted without question by the defendant; that its weight and effect were argued fully; that it was a question eminently such as a jury should decide; and that it cannot possibly affect defendant's right to a new trial to suggest that a different judgment on the point might have been reached had the defence been differently conducted. The suggestion in the commencement of the brief of defendant that the finding of the equitable value was slightly in excess of the apparent cash payment, was fully argued and fully explained in argument. The opening for defendant almost wholly confined itself to the claim stated in plaintiff's opening; and the evidence commented on was that the rights of plaintiff were to share equally in the surplus of the company, not simply to take the part of surplus declared in dividends; that all assets were compounded; that losses, forfeitures, short mortalities, and numerous matters enhanced this surplus; and that by their own showing the interest receipts exceed the mortalities paid for. The jury had reasonable ground for their finding. We showed that the company thought, and so said at the time the insurance was effected, doubtless based on its experience, that the dividends would absorb the notes. And proof, not objected to by the defendant, was admitted to show that the surplus, which the company's book introduced without objection, showed to be the property in due proportion of the assured, exceeded forty per cent.

HUGHES, District Judge. The defendant objects to the verdict in this case on the ground that the jury got at the amount of the equitable value of the policy by a wrong process and upon incorrect data, and that they erred in not deducting from the equitable value, as found, the amount of the premium notes given by the plaintiff to the company. The supreme court of the United States have decided in New York Life Ins. Co. v. Statham, 93 U. S. 24, that in cases in which, during the late civil war, southern holders of northern policies of life insurance were prevented by the war from paying their annual premiums, those policies lapsed; but that the holders could claim, after the war and the death of the persons named in the policies, the equitable value of the policies at the time of first default in the payment of premiums. In doing so the supreme court meant no more, I think, than to establish a principle of law. Nothing in their decision warrants the conclusion that they undertook more than to settle the legal question. I do not think that it was in the mind of the court, in thus declaring the law, to set out also the data upon which to determine, in every case, what the equitable value which they contemplated really was. The court uses many expressions, apparently designed to illustrate and explain what they mean by "equitable value," but they nowhere detail, with any attempt at completeness, either the data from which or the process by which this value is to be ascertained. They seem to refer these latter subjects to the actuary and the mathematician, and to leave the jury or the chancellor in each particular case to find as a fact what the equitable value of a policy is, from the best testimony at command. I have no doubt the court used the phrase in its actuarial sense, but I do not see that they said anything intended to deprive the jury or the chancellor of the prerogative of estimating the amount of the equitable value of a policy, upon the strength of such evidence as in each case might be adduced before them. We had a very intelligent investigation of

this ·subject at the trial in this case. The jury was an unusually good one, the trial fair and full, and the argument on either side able and exhaustive. The jury had the advantage of the testimony of very well-informed and competent witnesses, one or two of them learned experts. The question, what was the equitable value of this policy, in December, 1861, when default occurred in- the payment of the premium; and the further question, whether the amount of the premium notes which were given by the plaintiff in part payment of four annual premiums ought to be set off against such equitable value, were elaborately considered, and were both deliberately dealt with by the jury, on full proofs after full argument. Now, if I thought that the supreme court intended in its leading decision on this question to do more than declare that the plaintiff in such a case as this was entitled to the equitable value of his policy, and went on besides to define accurately the data and process for ascertaining its amount, I would feel authorized to examine critically the verdict rendered by the jury, and the data and process which they employed. But I consider that the supreme court intended only to declare the law, and left the jury to find the fact. The latter having been done. in this case by the jury, I do not feel authorized to do more than consider whether or not the jury has so grossly erred as to the fact, and so clearly disregarded the law, as to have presented a case for a new trial within the discretion of the court, as governed by the ordinary rules observed by courts in considering motions for new trial.

Counsel for defendant have exhibited correctly, no doubt, the process by which the jury got at the $1,615.47 which they found as their verdict. I have already said that I think it belonged to the jury to determine not only what amount they should find, but the process by which to ascertain the amount. I could not, therefore, interfere with the verdict unless it were grossly excessive. If this case had been before me as a chancellor, I am inclined to think I should have found a smaller amount; but the mere fact that a judge differs with a jury as ·to a fact does not make ·a case for a new trial. Defendants complain that the verdict of the jury is for twenty dollars more than it would have been if they had adopted the empirical plan of adding together all the cash premiums which plaintiff had paid up to December, 1861, and. given a verdict for the aggregate, with interest from the close of the war. They complain specially, of this result, that it imposes upon the insurance company the risk. without compensation, of the insurance which stood against them for four years. This is one view to take of the subject. though it must be remarked that as there was in fact no death during that period there was in reality no risk. A compensating view of the matter is, that the plaintiff, at the date when

his policy was terminated by law (December, 1861), had the right of insuring until the death. should occur, at a very reduced premium, and also at the death (which did occur in a very few years) to the amount insured for, of $10,-000. This right he lost by operation of law,. and the value which he so lost the company gained by the lapse of the policy; and therefore, in the light of actual events now known, the verdict of the jury cannot be regarded as practically injurious to the company. To the mind unskilled in the learning of the actuary and the mathematician, the verdict is apt to appear more liberal to the company than to the plaintiff; and inasmuch as it so nearly corresponds with the result of the science of so learned and expert an actuary as Professor Smith, who testified as a witness at the trial, I think the verdict commends itself as reasonably correct to practical minds. I see, therefore, no material objection to the verdict on the score of excessiveness.

The other objection of the defendants is, that the amount of the notes given for forty per cent. of the annual premiums (four in. all) was not treated by the jury as a valid offset against the equitable value found as already shown. These notes were given by the plaintiff at the solicitation of the company's local agent, and on the assurance that the scrip dividends, which it was a part of the scheme of this company to declare and pay to its insurers, would be equal to and would pay off and extinguish these forty per· cent. premium notes. The jury considered that these confident representations of the company's agent were sufficient to raise the presumption that the scrip dividends did in fact equal the amount of the notes, and to throw the burden of proving to the contrary upon the company. The whole matter was very fully gone into by counsel in their argument at the trial; the jury dealt with the case on this basis after full argument as judges of the fact; and, having virtually found as a fact that the scrip dividends did offset the notes, I am indisposed to nullify their verdict on that account. The motion for a new trial is for these reasons denied.